[897 NYS2d 489]

In the Matter of JOHN R. HIBNER, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 23, 2010

APPEARANCES OF COUNSEL

*Rita E. Adler*, Hauppauge (*Mitchell T. Borkowsky* of counsel), for petitioner.

*McDonough & McDonough*, Melville (*Chris McDonough* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District (hereinafter the Grievance Committee) served the respondent with a petition dated August 23, 2007, containing nine charges of professional misconduct. After a preliminary conference on April 8, 2008, and further hearings on September 17 and 25, 2008, the Special Referee sustained charges one through six but found that charges seven through nine had not been established by a fair preponderance of the credible evidence. The Grievance Committee now moves to confirm the Special Referee's report to the extent that it sustains charges one through six, to disaffirm to the extent that it does not sustain charges seven through nine, and to impose such discipline as the Court deems just and proper. The respondent cross-moves to confirm the Special Referee's report with respect to charges seven, eight, and nine and to disaffirm with respect to charges two, four, five, and six.

Charge one alleges that the respondent allowed his professional judgment on behalf of his clients to be affected by his own financial, business, property, or personal interests in that during the course of his representation of two clients (hereinafter the clients) in a child neglect matter pending in Family Court, he had the clients convey title to their home to him in order to prevent a foreclosure sale of the property and, thereafter, sought to evict them while continuing to represent them in the Family Court matter, in violation of Code of Professional Responsibility DR 5-101 (a) (22 NYCRR 1200.20 [a]).

On or about February 21, 2001, the clients' lender, Homecomings Financial Network, commenced a foreclosure action against

them with respect to their residence. That action resulted in a judgment of foreclosure, in favor of the lender, dated March 6, 2002. The clients entered into a forbearance agreement with the lender on or about May 24, 2002, by which the lender agreed to postpone the foreclosure sale provided the clients made timely and consistent payments pursuant to a plan.

On or about August 30, 2002, Child Protective Services served a summons and petition upon the clients alleging neglect and endangerment of their 11-year-old son and directing their appearance in Family Court, Nassau County, on September 10, 2002. The neglect proceeding was adjourned to September 23, 2002, and the clients retained the respondent to represent them.

The respondent requested and received from the lender payoff quotes, the latest of which stated that the amount necessary to satisfy the clients' mortgage through October 10, 2002 was $244,741.39. The neglect proceeding was adjourned to November 12, 2002, and the foreclosure sale was rescheduled for November 6, 2002.

On the evening of October 10, 2002, the respondent had the clients execute and deliver to him a deed conveying their premises to him. They were not represented by independent counsel with respect to that deed. The deed bears the signature and notary stamp of the respondent's law partner, Kevin Carsey, purportedly evidencing that it was signed in his presence on October 10, 2002. Kevin Carsey was not present at the time.

On or about October 11, 2002, the respondent remitted funds totaling $244,690.73 to the lender in satisfaction of the clients' mortgage. On or about October 16, 2002, the respondent caused the deed, with the purported signature of Kevin Carsey, to be recorded in the Nassau County Clerk's office.

On or about October 23, 2002, the respondent prepared and mailed to the clients a lease, establishing a landlord-tenant relationship between himself and them. The proposed lease term was one year, from November 1, 2002 to October 31, 2003, for a monthly rental of $1,800. The lease contained no provisions for the parties' respective rights and obligations with respect to the equity in the premises. Although the clients did not sign the lease, they continued to reside in the premises.

Between October 23, 2002 and November 7, 2002, the respondent issued numerous personal checks totaling $14,500 to pay tax arrears or to redeem tax liens against the property. The respondent continued to pay taxes when due and communicated

with the lender and its attorney to obtain a satisfaction of mortgage and cancellation of lis pendens regarding the foreclosure action.

The Family Court neglect proceeding was again adjourned, to December 10, 2002. The respondent appeared in Family Court on that day with the clients and their son. The matter was adjourned to April 2, 2003.

On or about January 17, 2003, while still representing the clients in the neglect proceeding, the respondent commenced a summary nonpayment proceeding against them in the District Court, Nassau County, for rent arrears for three months, pursuant to the alleged oral agreement. The clients appeared in District Court on February 4, 2003 without independent counsel and entered into a stipulation wherein they acknowledged arrears of $5,400 and consented to the entry of a judgment of possession and the issuance of a warrant of eviction against them if they failed to pay those arrears within 45 days, pursuant to a schedule. The settlement provided that the respondent would be entitled to a money judgment and immediate entry of a judgment of possession and a warrant of eviction without stay against the clients in the event they failed to comply.

The respondent received a money order for $1,800 from the clients on or about February 4, 2003. Upon the clients' failure to meet the next payment under the stipulation, the respondent submitted an affidavit of noncompliance and proposed judgment and warrant of eviction to the District Court. On February 24, 2003, the respondent received from the court the signed and entered judgment and warrant of eviction.

While still representing the clients in the neglect proceeding, the respondent forwarded copies of the warrant and a check for $87.50 to the Nassau County Sheriff to evict the clients. Pursuant to a directive from that office, the respondent submitted a certification packet and the eviction was scheduled by the Sheriff for April 3, 2003.

On April 2, 2003, the respondent appeared with the clients in Family Court for the final hearing in the neglect proceeding. The respondent wrote a letter to the Nassau County Sheriff withdrawing the warrant and staying the scheduled eviction.

On or about April 8, 2003, the clients sued the respondent and his law firm in the Supreme Court, Nassau County, to vacate the deed and enjoin him from evicting them. The Supreme Court action was settled by stipulation on or about

December 1, 2004. On or about December 30, 2004, the respondent received $350,000 from the clients and executed and delivered a deed reconveying the premises back to them.

Charge two alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), by virtue of the factual specifications of charge one.

Charge three alleges that the respondent entered into a business transaction with the clients wherein they had differing interests; the clients expected him to exercise professional judgment for their protection; the respondent failed to disclose, in writing and in a manner reasonably understandable to the clients, the terms of the transaction; and the respondent failed to obtain the clients' written consent to the terms of the transaction and the respondent's inherent conflict of interest in the transaction, in violation of Code of Professional Responsibility DR 5-104 (a) (22 NYCRR 1200.23 [a]).

At all relevant times between September 10, 2002 and April 3, 2003, when the respondent was engaged as the clients' attorney with respect to the neglect proceeding, they believed that he was exercising professional judgment on their behalf and acting to protect their legal interests. When the respondent had the clients execute and deliver the deed to him, he failed to disclose, in writing and in a manner reasonably understandable to them, the terms under which they were conveying their interest to him. Nor did the respondent fully disclose his inherent conflict of interest. The respondent failed to advise the clients to seek the advice of independent counsel before entering into the transaction and failed to obtain their written consent to the terms of the transaction and to the respondent's inherent conflict of interest.

Charge four alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications of charges one to three.

Charge five alleges that the respondent intentionally prejudiced or damaged the clients during the course of their professional relationship by seeking to evict them from their home during the pendency of the child neglect proceeding, in violation of Code of Professional Responsibility DR 7-101 (a) (3) (22 NYCRR 1200.32 [a] [3]).

By virtue of the neglect proceeding, the clients were faced with the potential removal of their son, Patrick, from their custody and home by Child Protective Services. By commencing the landlord/tenant action and seeking to evict the clients during the pendency of the neglect proceeding, the respondent intentionally undermined their ability to present a stable home environment and successfully defend themselves in the child neglect proceeding.

Charge six alleges that the respondent engaged in conduct adversely reflecting on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]), based on the factual specifications of charges one to five.

Charge seven alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation by knowingly offering a deed containing a false notarization for filing with the Nassau County Clerk and by falsely testifying under oath concerning the circumstances surrounding the execution and notarization of the deed, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]).

The respondent's law partner, Kevin Carsey, was not present at the premises on the evening of October 10, 2002, and did not notarize the clients' signatures on the deed while at the premises on that date. Mr. Carsey notarized the signatures on the deed after they were executed and outside the clients' presence.

On or about October 16, 2002, the respondent offered for recording the deed containing the false notarization. On or about October 12, 2006, the respondent falsely testified under oath at the Grievance Committee's offices that Mr. Carsey accompanied him to the premises on October 10, 2002, was present for the execution of the deed, and notarized it while present on the premises.

Charge eight alleges that the respondent engaged in conduct prejudicial to the administration of justice, in violation of Code of Professional Responsibility DR 1-102 (a) (5) (22 NYCRR 1200.3 [a] [5]), based on the factual specifications of charge seven.

Charge nine alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR

1200.3 [a] [7]), based on the factual specifications of charges one to eight.

Based on the evidence adduced, we conclude that the Special Referee erred in failing to sustain charges seven, eight, and nine. Accordingly, the Grievance Committee's motion to confirm the Special·Referee's report in part and to disaffirm that report in part is granted and we sustain all nine charges. The respondent's cross motion to confirm the Special Referee's report to the extent that it fails to sustain charges seven, eight, and nine and to disaffirm it to the extent that it did sustain charges two, four, five, and six is denied in its entirety.

In determining an appropriate measure of discipline to impose, the respondent asks the Court to note his altruistic motivation, his expressed regret, his previously unblemished record, and the favorable character letters submitted by six locally practicing attorneys. As evidence of his intent to aid the clients, the respondent points out an admission by one of the clients under oath that the respondent gave him approximately $600 to $800 to get the utilities back on in his residence. The respondent further points out that this matter did not emanate from a complaint by the clients inasmuch as his conduct did not impact upon his representation of them in Family Court. He maintains that his questionable transactions and conflicts were not aggravated by additional misconduct.

While he may have suffered from the fiscal irresponsibility of his clients, the respondent evinced serious misjudgment in commencing an eviction proceeding against them while continuing to represent them in a pending Family Court matter. Balancing the respondent's previously unblemished record and the absence of substantial harm to the clients with his display of gross misjudgment, we conclude that respondent should be suspended from the practice of law for a period of four years.

PRUDENTI, P.J., MASTRO, RIVERA, FISHER and MILLER, JJ., concur.

Ordered that the Grievance Committee's motion to confirm in part and disaffirm in part the report of the Special Referee is granted and all nine charges are sustained; and it is further,

Ordered that the respondent's cross motion is denied in its entirety; and it is further,

Ordered that the respondent, John R. Hibner, is suspended from the practice of law for a period of four years, commencing April 23, 2010, and continuing until the further order of this

Court, with leave to the respondent to apply for reinstatement no sooner than six months prior to the expiration of the four-year period, upon furnishing satisfactory proof that during that period he (a) refrained from practicing or attempting to practice law, (b) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (c) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (2); and (d) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, John R. Hibner, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.

Ordered that if the respondent, John R. Hibner, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).